66024. BOWMAN et al. v. UNITED STATES LIFE
INSURANCE COMPANY et al.

BIRDSONG, Judge.
On motion for rehearing, the original opinion of this court is withdrawn and vacated, and the following is substituted therefor.

This is an appeal from the grant of summary judgments to the defendants U. S. Life Insurance Co. and Fidelity Bankers Life Insurance Co.

Appellant Virginia Bowman was severely injured in a fall in October 1974, while her husband James Bowman was employed at Marietta Toyota. Mrs. Bowman's injuries were extensive. Initially

she was a quadriplegic. By 1982, she remained a paraplegic confined to a wheelchair.

At the time Mrs. Bowman was injured, Marietta Toyota provided medical insurance for its employees and dependent spouses through "Southeastern Group Trust," a trust underwritten by appellee Fidelity Bankers. On January 31, 1975, subsequent to the fall and resulting injuries to Mrs. Bowman, the "master policy" between Fidelity Bankers and Marietta Toyota was terminated entirely with no further coverage thereunder afforded to any of the employees. Fidelity arranged to transfer all responsibility for continuous coverage to a group trust underwritten by appellee U. S. Life. This group trust was "International Group Trust" (IGT). However, in the interest of a reduced premium rate, Marietta Toyota elected not to adopt coverage under IGT. On the same day that coverage would have commenced under IGT, Marietta Toyota obtained coverage under a group trust called "3/33" which also was underwritten by appellee U. S. Life. Premiums for coverage under 3/33 were deducted from James Bowman's pay from February 1, 1975, until he left Marietta Toyota voluntarily on July 24, 1975.

Mrs. Bowman continued to require extensive and costly medical care and therapy. However, after February 1, 1975, insurance broker Bert Card attempted to make claims for Mrs. Bowman to Fidelity Bankers under an "extended coverage" provision of the Southeastern Group Trust policy which provided coverage for disabled persons for 18 months after termination of that individual's insurance coverage. Fidelity Bankers denied coverage responsibility for Mrs. Bowman because the master policy provided as of the time the parties (Fidelity and Marietta Toyota) entered into it: "Notwithstanding anything to the contrary herein contained ... with respect to all employees insured hereunder and their dependents, no benefits will be paid under the Group Accident and Health Insurance for any expenses incurred or indemnity accruing after the date this policy is terminated in its entirety...." Thus, under the express terms of the contract, the 18-month extension did not apply if the contract was terminated in its entirety. Nevertheless, Mr. Card persevered in his attempts to gain extended coverage from Fidelity for Mrs. Bowman until the state insurance commissioner's office correctly offered its opinion that when the master contract between trust and underwriter terminated coverage within the terms of the policy, the employee was bound thereby.

Not until 1981 did Card or the Bowmans submit any claims to 3/33 (U. S. Life). However, before Mr. Bowman left the employ of Marietta Toyota in July 1975, he apparently contacted U. S. Life concerning coverage for his wife's disability and expenses. Mr.

Bowman's letter or communication to U. S. Life does not appear in the record. However, U. S. Life's reply of July 11, 1975, does appear, making reference to what would have been the pertinent IGT policy number and stating: "Our records indicate that your group coverage terminated February 1, 1975, due to non-payment of premiums. Therefore, expenses incurred after February 1, 1975, are not covered." A copy of this letter was sent to IGT. On July 15, 1975, the Bowmans' attorney wrote to the senior claims examiner of the "policy benefits department" of U. S. Life in New York City, again referencing the IGT policy number. This letter insisted that Mr. Bowman had paid insurance premiums through his employer to U. S. Life continuously from February 1, 1975. The response to this letter indicated that the Bowmans had no coverage with U. S. Life.

U. S. Life apparently did not learn until after suit was filed and Mr. Bowman's deposition was taken in 1979 that his insurance had been with the 3/33 Group Trust of U. S. Life. At this juncture of the case, U. S. Life apparently conceded coverage of Mrs. Bowman at least for the period from February 1, 1975, until July 24, 1975, when Mr. Bowman voluntarily terminated his employment with Marietta Toyota.

Fidelity paid (with reservation of rights) every claim for expenses incurred which were submitted to it after February 1, 1975, until July 1976, which perforce would include the 18-month extension of benefits. In this action, it denies even potential liability because it has paid all claims presented and has never received any additional claims. U. S. Life (3/33 Group Trust) contends no claims were ever filed with it until 1981 and these few it promptly paid (with reservation of rights).

On June 30, 1978, the Bowmans filed an action for declaratory relief against both U. S. Life and Fidelity Bankers. However, process was not served on U. S. Life until October 9, 1978, 101 days after filing of the complaint. The policy of coverage by U. S. Life required the filing of a suit on the policy within three years of the end of the period for submitting a claim, which was 90 days from the occurrence giving rise to such coverage. The record is undisputed in showing that the last expense covered by 3/33's policy occurred in April 1975. The trial court on the basis of the above as well as other evidence and arguments granted summary judgment to both insurance companies.
*Held:*

1. The trial court did not err in granting summary judgment to Fidelity Bankers and to U. S. Life.

2. No party can seriously dispute the fact, and the record contains no evidence to the contrary, that the date of complete termination of the policy between Fidelity and Marietta Toyota

occurred January 31, 1975. Under the express provisions of the contract, the extended benefits provision had no application when the policy was terminated in its entirety. Consequently, there can be no liability on the part of Fidelity after January 31, 1975. Furthermore, even accepting appellants' erroneous argument that the 18-month extension remained viable, the unrebutted facts before the trial court conclusively demonstrated that Fidelity honored all claims submitted to it until July 1976. Thus, even under appellants' interpretation of the policy, Fidelity has discharged all potential liability to appellants.

The purpose of the Summary Judgment Act is to eliminate the necessity for trial where, giving the non-moving party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, nevertheless a moving party is entitled to a judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442). The record demonstrates no genuine issue of material fact as to Fidelity's liability to the Bowmans.

3. As for U. S. Life, the record shows without dispute that the last potentially compensable claim during the U. S. Life policy period was on April 4, 1975. Under the policy, appellants had 90 days from that date in which to file their notice of claim, and they had three additional years in which to file suit (July 3, 1978). However, service was not perfected until October 9, 1978, or approximately three months after the running of the limitation period contained in the policy.

The statute of limitation is tolled by the commencement of a civil action at law. OCGA § 9-11-4 (c) (Code Ann. § 81A-104) requires that service of a complaint shall be made within five days of the filing of the complaint. If an action is filed within the period of limitation, but not served upon the defendant within five days or within the limitation period, plaintiff must establish that service was made in a reasonable and diligent manner in an attempt to insure that proper service is made as quickly as possible. If reasonable and diligent efforts are not made to insure proper service as quickly as possible, plaintiff is guilty of laches, and in such case, service will not relate back to the time of the filing of the complaint for the purpose of tolling the statute of limitation. *Smith v. Griggs,* 164 Ga. App. 15 (296 SE2d 87); *Childs v. Catlin,* 134 Ga. App. 778 (216 SE2d 360).

In *Smith,* supra, it was determined that a delay of 56 days following the filing of the suit constituted an unreasonable delay subjecting the plaintiff to laches and requiring dismissal of the complaint on the grounds of the statute of limitation. "The plaintiff has the burden of showing lack of fault." *Smith,* supra, p. 18. In the

present case, the appellants have produced no evidence whatsoever indicating due diligence or lack of fault in perfecting service upon U. S. Life, despite the fact that service was not perfected on U. S. Life until 101 days from the date of the filing of the complaint and after the running of the statute of limitation. Consequently, the record shows no genuine issue of material fact as to the lack of diligence by the Bowmans in perfecting service upon U. S. Life within a reasonable time following the filing of the complaint, and mandates judgment in favor of U. S. Life on this ground.

The Bowmans argue that the three-year limitation period was waived by U. S. Life through its initial denial of coverage for the Bowmans' claims. This contention is without merit. The record contains no evidence of any express or implied waiver of this specific policy provision by U. S. Life. The Bowmans have proceeded in this action on the basis of the policy. "[I]f the source of the right claimed has evolved from the written contract of insurance, the limitations contained in it supersede any other general statutory limitations." *Modern Carpet Indus. v. Factory Ins. Assn.,* 125 Ga. App. 150, 152 (186 SE2d 586). U. S. Life did nothing to prevent the filing of suit within the appropriate time. The denial of any claim generally constitutes notice to the insured that he must pursue his legal remedies under the policy. Id., p. 151. Mr. Bowman admittedly obtained a copy of the 3/33 policy booklet explaining coverage and claim procedures well within the contractual limitation period. In fact, the Bowmans did file this action within the contractual limitation period. However, they have produced no evidence upon which the trial court could have concluded that the delay in service was reasonable.

*Judgments affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED JULY 29, 1983 —
REHEARING DENIED AUGUST 8, 1983 —

*Barry Staples,* for appellants.
*Stephen F. Carley, Robert D. Feagin,* for appellees.